(122 So. 27)

**BELLINGRATH v. SAMUEL et al.**
(3 Div. 864.)

Supreme Court of Alabama.   Jan. 31, 1929.

Rehearing Denied May 2, 1929.

Jack Thorington and Steiner, Crum & Weil, all of Montgomery, for appellant.

264

Weil, Stakely & Cater and S. H. Dent, all of Montgomery, for appellees.

BOULDIN, J. A mortgage given by a tenant upon an unplanted or ungathered crop is subject to the superior lien of the landlord for rent.

This rule obtains although the mortgagee has no actual notice, nor knowledge of facts to put him on inquiry, which, if followed up, would disclose the existence of the tenancy. It has been extended to cases wherein the mortgagee represented himself as the owner of the land, or was in fact a purchaser in possession, but subject to a condition that upon default in payment of purchase money, the relation of landlord and tenant should exist. This by force of positive statute making the lien of the landlord superior to all other liens.

All persons are chargeable with notice of the relation of the landlord and tenant as to crops to be grown or being grown on rented land. Waite, LaFils & Co. v. Corbin, 109 Ala. 154, 19 So. 505; Bush & Co. v. Willis, 130 Ala. 395, 30 So. 443; British & American Mortgage Co., Ltd., v. Cody, 135 Ala. 622, 33 So. 832; McLellan v. Roberson & Son, 171 Ala. 120, 55 So. 99; Hughes & Tidwell Supply Co. v. Carr, 203 Ala. 469, 83 So. 472; Gillespie v. Bartlett & Byers, 211 Ala. 560, 100 So. 858.

The like rule obtains as to property advanced by landlord to the tenant under the statute. Walls v. Skelton, 215 Ala. 357, 110 So. 813.

The landlord's lien is not lost, nor its priority displaced, by the mere removal of the crops from the rented premises, and, as in this case, storing same in the warehouse of the mortgagee, awaiting better price conditions. The lien persists on the crop or its proceeds until the same has passed into the hands of a bona fide purchaser.

What constitutes a bona fide purchaser after removal of the crop from the rented premises is the main question here involved.

The removal of the crop from the rented premises, and turning them over to the mortgagee for application to the payment of the mortgage debt, without more, does not constitute the mortgagee a bona fide purchaser. True, the general rule is the sale of property in absolute payment of an existing indebtedness is a sale and purchase for value.

But, in this class of cases, the sale is deemed a mere consummation of the original transaction between the tenant and his mortgagee; his title is referred to the mortgage and is subject to the priorities fixed by law when it was given. This is the direct holding in Lomax v. Le Grand & Co., 60 Ala. 537. True, in that case the mortgage gave notice that the crop was to be grown on rented land. But the decision is not rested upon that ground, but on the principle above stated. This reasoning is followed in cases heretofore cited. See, also, Manasses v. Dent, 89 Ala. 565, 8 So. 108.

Appellees rely upon Foxworth v. Brown Bros., 120 Ala. 59, 24 So. 1. The broad language employed in discussing plaintiff's refused charge No. 3 in that case tends to support appellees' position. We note the same eminent judge who wrote that decision wrote the later case of British & American Mortgage Co., Ltd., v. Cody, supra.

We are of opinion the rule above stated is the sounder rule, the rule in keeping with the purpose of the statute, and the one supported by the cases cited. Otherwise, the tenant and his mortgagee would defeat the priorities fixed by law by consummating the transaction, the entire relations between the parties being reversed by the mere fact that the cotton was removed from the rented premises.

In so far as Foxworth v. Brown Bros., supra, is in conflict with this decision, it is modified.

The court below gave the affirmative charge for defendant on his plea of tender of balance after paying its demand. Appellant insists this was error, and further that the affirmative charge was due the plaintiff as requested.

The giving of the affirmative charge for defendant was error for more than one reason.

The evidence of Mr. Stephens, the tenant, tends to show that after the cotton was removed from the rented premises and stored in defendants' warehouse to await better prices, the landlord's agent urged the payment of rent, and thereupon he informed de-

fendant he needed to pay his rents and arrange for another year, and therefore directed defendant to get bids for the cotton; that a sale was consummated, defendant company receiving the proceeds, which it still holds. While this witness later on expressed doubt as to when he spoke to defendant about his unpaid rent, it became a jury question to determine, in the light of the circumstances and the subject-matter of the conversation as given by the witness, whether defendant had actual notice of the lien for rent at the time of the sale.

Again, under one phase of the evidence, the defendant was not the purchaser of the cotton in satisfaction of the mortgage, nor was it sold for its satisfaction by mutual assent. To the contrary, the tenant on his part expected to pay his rent from the proceeds, and it was when defendant, after getting the proceeds in hand, claimed the prior right to appropriate same to its own debt, that this controversy arose and the tenant left the matter to the landlord and the mortgagee.

■ The statute gives the landlord a lien on the proceeds of the cotton.

A sale thereof, with the consent of the landlord, for the purpose of raising means to pay the rents or advances, is not a waiver of the lien against such proceeds. The cotton is released, and the landlord's lien attaches to the proceeds. This lien persists until such proceeds pass to a bona fide holder. We would make this clear. Waiver is a matter of intention. It may be by express words, or by conduct inconsistent with the further assertion of a lien, operative by way of estoppel in favor of one who has put himself in worse position on the faith of such words or acts. A consent to a sale to enable his tenant to pay his rent, by its very terms, looks to the proceeds as the further subject-matter of the lien. If paid over to the tenant in good faith, the landlord takes his chances if they do not reach him, but pass to a bona fide holder. Under no view of the evidence can it be said the landlord here consented to the sale of the cotton without payment of the rents-from·the proceeds. It results the proceeds now in the hands of defendant are subject to the lien, as was the cotton when stored in the warehouse. Ehrman v. Oats, 101 Ala. 604, 14 So. 361; Albertville Trading Co. v. Critcher, 216 Ala. 253, 112 So. 907.

As matter of law the landlord's lien attached to this cotton; the mortgage was subject to such lien. The removal of the crop from the premises and storing same in the warehouse did not change priorities; a subsequent sale even by agreement between mortgagor and mortgagee in payment of the mortgage debt would not affect priorities as to proceeds.

All this is true whether the mortgagee knew or had notice that the crop was grown on rented premises or not.

What we have written relates to the state of defendants' claim as of the time the cotton was removed from the premises.

■ There is evidence that after the cotton was stored in the warehouse defendant made further advances on the cotton.

If, at that stage, the warehouse company seeing the tenant in the full possession of the cotton, with all indicia of ownership, and being without actual notice of any landlord's lien as the law defines notice, did then advance money on the security of the cotton, to that extent it is entitled to protection. Although the mortgage purported to secure future advances, if such further advances were made under the added inducement of conditions at that stage, to that extent the warehouse company occupies the position of a bona fide purchaser or incumbrancer. Scaife: & Co. v. Stovall, 67 Ala. 237.

■ The mortgage described the crops as including cotton grown "on my farm, or any other places cultivated by me, or in which I have an interest, the present year in Montgomery County."

We do not think this description, within itself, shows notice that the cotton in question was raised on rented land. The inclusive terms of such crop mortgages may be intended to cover all crops subject to mortgage, without having in mind any specific body of lands. However, the evidence of long time business relations between mortgagor and mortgagee, the proximity to Montgomery, and general circumstances, made it a question for the jury whether defendant had notice that this cotton, or some of it, was raised on rented land. Neither party was, therefore, due the affirmative charge as to advancements made after the cotton was warehoused with defendant.

Reversed and remanded.

ANDERSON, C. J., and SAYRE, GARDNER, and FOSTER, JJ., concur.

THOMAS and BROWN, JJ., not sitting.